## THE H. E. RUNNELS.

### JENKS SHIP-BUILDING CO. v. WALLACE & CUNNINGHAM TRANSIT CO.

(Circuit Court of Appeals, Sixth Circuit. October 5, 1897.)

No. 450.

SALVAGE—AMOUNT OF COMPENSATION.

An award of $2,450 to a steam barge, worth, with her cargo, about $80,-000, for going to the rescue of another barge loaded with coal, which was on fire in the Great Lakes, held not excessive, where the risk to the rescuing vessel was considerable, and the value of the vessel and cargo saved amounted to $15,000.

Appeal from the District Court of the United States for the Eastern District of Michigan.

This was a libel in admiralty by the Wallace & Cunningham Transit Company against the steamer H. E. Runnels, whereof the Jenks Ship-Building Company was claimant, to recover compensation for salvage services. The circuit court rendered a decree for libelant in the sum of $2,450, and the claimant has appealed.

Harvey D. Goulder (S. H. Holding, of counsel), for appellant.
Moores & Goff, for appellee.

Before TAFT and LURTON, Circuit Judges, and SAGE, District Judge.

TAFT, Circuit Judge. This, like the last case considered (The R. R. Rhodes v. Fay, 82 Fed. 751), is an appeal from a decree of the district court for salvage. On May 29, 1895, the steam barge New Orleans, owned by the Wallace & Cunningham Transit Company, was bound on a voyage from Buffalo to Chicago, laden with a cargo of 1,976 tons of hard coal. About 6 o'clock in the morning, when 40 miles above Long Point, the steam barge Runnels was discovered on fire and flying a signal of distress, about 10 miles away and 3 or 4 miles off the course of the New Orleans. The New Orleans hastened to the assistance of the Runnels as fast as her engines could be made to drive her, and the hose was gotten ready to fight the fire. About 7 o'clock the New Orleans reached the Runnels. The fire, which had begun near the smokestack, had by this time swept away the after-house, the cabin, and the deck, and had burned through the hull about two feet above the water line. The vessel was a mass of flames aft the smokestack. One of her boats had been burned, and, when the New Orleans reached her, her crew had constructed a raft preparatory to leaving her. The New Orleans ran up on the port side of the Runnels, made fast to her with two lines,—one amidships, and one from the port quarter of the New Orleans to the port bow of the Runnels. Subsequently a third line was run from the port bow of the New Orleans to the port quarter of the Runnels. Two streams of water were put upon the Runnels, and in about a half hour the flames were under control. At that time the steam barge Milwaukee came to the starboard side of the New Orleans, and, running a line of hose across the deck of the New Orleans, assisted in throwing water upon the fire. The three vessels lashed together, with the New Orleans in the middle, then started for Ashtabula, 30 miles distant, the Runnels being towed stern foremost. About 12 o'clock, when off Ashtabula Harbor, the Milwaukee left, and continued on her voyage; and the New Orleans took the Runnels into the harbor, where she turned her over to some harbor tugs, who took her in, and ran her on the bottom, where she sank. The evidence is quite satisfactory that, had the fire been allowed to go on for half an hour longer, the Runnels would have sunk in midlake, in deep water, and have been a total loss. The value of the Runnels in Ashtabula Harbor, as fixed in the adjustment for insurance, was $15,000, and the value of the New Orleans and her cargo was about $80,000. Judge Swan, sitting in the court below, allowed $2,450 as a reasonable and proper compensation, and allowed the mate $50 for gallantry in carrying a line from the New Orleans to the Runnels at great personal risk. In the adjustment with the insurers, the owner of the Runnels asserted a claim against the insurance companies, which was allowed, of $1,500 salvage for the Milwaukee, and $1,500 for the New Orleans; thus admitting that the work done and

the risk involved merited an award of salvage of, at least, $3,000. It is clear that the services of the Milwaukee were quite small as compared with those of the New Orleans, and that, if the amount of salvage to be allowed was $3,000, the amount awarded to the New Orleans by the district court was by no means too great. The fact that the Milwaukee got more than she deserved by the concession of the owners of the Runnels cannot affect the amount which the New Orleans should receive. The New Orleans arrived upon the scene at the nick of time, and rendered very prompt service; and, while the risk of fire to her may not have been very great, yet the bringing of a vessel and cargo worth $80,000 up to a burning steamer, and near enough to throw water onto the flames, must have in it some element of risk. Of course, the main reason for making the salvage substantial in this case was the certainty that there would have been a total destruction of all the property salved had it not been for the efficient aid rendered by the New Orleans. We have discussed somewhat more at length the elements which should enter into salvage in the case preceding this one, that of The R. R. Rhodes v. Fay, and it is not necessary to consider the matter further. The decree of the district court is affirmed.