THE ELIZA STRONG.

(Circuit Court of Appeals, Sixth Circuit. April 2, 1904.)

No. 1,264.

1. SALVAGE—AMOUNT OF AWARD—REVIEW ON APPEAL.

A salvage award will not be set aside on account of its amount unless the appellate court is convinced that there was a manifest abuse of his discretion by the trial judge.

Appeal from the District Court of the United States for the Western District of Michigan.

The following is the opinion of the court below (Wanty, District Judge):

The steamer Eliza H. Strong, bound for Buffalo, left Duluth on the 27th of August, 1901, with a cargo of pine lumber, consisting of about 950,000 feet, 375,000 to 400,000 feet of which was in the hull. It stopped at Washburn and picked up the schooner Commodore. At about 11 o'clock on the night of the 29th, the Strong sprang a leak, and, in spite of all the efforts of the crew, the water gained on them so that the fires were put out, and the deck load aft began to move, and the crew took to the small boats. Very shortly thereafter part of the deck load aft went overboard, carrying the cabin and smoke stack with it. The crew boarded the Commodore, which sailed into Munising, arriving at about 2 o'clock the next morning. There being no night telegraph service at that place, and no tug stationed there, nothing could be done toward returning to the vessel that night, although this was the intent and purpose of the captain. At about half-past 9 o'clock in the evening of August 30th, the steamer Mueller, laden with a cargo of lumber, bound from Ashland to Chicago, discovered the Strong in her damaged condition, with a part of her deck load gone, and submerged aft, but her bow still out of water. After ascertaining that there was no one on board, a boat from the Mueller, manned by the mate, Louis Larson, and Seamen Ralph Higgie and John W. Bonner, went to the wreck; and Higgie got aboard the Strong on the weather side, and the mate and Bonner boarded her from the lee side. These three men hauled a 9-inch 100-fathom line from the Mueller onto the Strong, and the two seamen held it while the mate chopped away the bulwarks, and they then fastened the line around the stem and anchors of the Strong. The steering gear of the Strong was disabled, and, as the men could do no good aboard of her, after making the line fast, they returned to the Mueller, which towed the Strong at a rate of 2½ miles an hour to Munising Bay, at the entrance of which, at about 9 o'clock in the morning, they met the tug Smith, having aboard the master of the Strong, and substantially all the members of his crew. The Smith had been employed to go out and bring the Strong into Munising. The Mueller declined to give up the Strong, but continued with her in tow, and put her on the beach, in soft mud, where she was protected from the sea, and lay in security in possession of the members of the crew of the Mueller until the marshal took possession of her under process in this cause. The libel was filed, claiming salvage in the sum of $20,000; alleging the value of the Strong and her cargo to be $40,000. William H. Strong, as master and bailee of the ship and cargo, claimed them; and, under the order of the court, an appraisal was made, placing the value of the steamer at $4,500, and her cargo, consisting of 710,000 feet of pine lumber, at $5,977.20, making the total $10,477.20.

The Strong was not derelict, although the master and crew had abandoned her for the time being in order to go to Munising for the purpose of getting assistance to save the vessel and cargo. The Island City, 1 Black, 128, 17 L. Ed. 70; The Bark Cleone (D. C.) 6 Fed. 517, and cases cited on page 525.

---

¶ 1. Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.

See Salvage, vol. 43, Cent. Dig. § 133.

The service, however, was a salvage service (The Hyderabad [D. C.] 11 Fed. 749, and cases cited in that opinion and the note following it), although it is colored by the fact that the Strong would have been rescued by her own crew and the tug Smith within a few hours of her rescue by the Mueller, when the service would have been one of towage under contract, instead of one of salvage, under what the salvors thought was a case of derelict. The claimant objects to paying a large sum for a service which could have been contracted for at ordinary rates if the Mueller had not appeared on the scene, while the libelants object to having their work viewed in the light of ordinary service, and claim that it was an arduous and hazardous undertaking, requiring the exercise of great skill and daring, and that the Strong and her cargo might have found the bottom of the lake or the beach, but for the timely assistance of the Mueller. But on a review of the numerous cases, which it is unnecessary to cite, it would seem that the award should not be materially different on account of the ship being technically derelict or not. "Whether derelict or not, the salvage award will not depend upon any fixed rule of proportion. It will be reached as in every other case of salvage— a generous recompense to the salvors, so as to encourage them, and also to stimulate others. The service is the relief of property from an impending peril of the sea." The Eleanor (D. C.) 48 Fed. 842. It is easily conceivable that salvage might take place where the danger to property, the value of the property saved, the risk of life, skill, labor, and duration of service required, would be greater where the vessel was not actually derelict than in another case where it was. In either case the award should be based on the value of the property saved, the danger in which it was found, the risk of life and property required in the rescue, the skill and labor required, and the time lost in the service, together with the value of the means employed and risked.

In considering the question of the value of the property saved, I have come to the conclusion that the appraisal is about correct, although, in the light of a successful voyage afterwards to Buffalo, and the putting of the vessel in repair, the value of the vessel may now appear to be somewhat more; but that appearance comes from the successful issue of the undertaking to tow the vessel to Buffalo, and is based upon the cost of the repairs there. I find that the value of the Strong, in her damaged condition, and her cargo, at the time she was beached, was $10,477.20. Taking into consideration all of the testimony in the case, it does not seem to me that there was anything bordering on the heroic in rescuing this vessel. The fact that Higgie boarded the damaged ship on the weather side, instead of approaching her on the lee side, where the mate and Bonner boarded her, and the holding of the line by the two seamen while the mate chopped away the bulwarks, would signify that the work could not have been so perilous as the argument of counsel might indicate. There was, of course, danger in boarding the vessel, but not of that unusual character which would have deterred ordinary seamen from the undertaking. The Mueller was never in danger, as the only harm which could come to her would be the parting of the line, and thereby endangering her propeller, wheel, and steering gear, the danger of which was obviated by the slow rate of speed at which she handled the tow. The Mueller's expenses were $60 a day, and the service took 15½ hours, besides 3 hours longer to reach the course on which her voyage lay. As I have said above, the award in cases of this kind should not be made on the basis of a percentage of the value of the property saved, but should be fixed, under all of the testimony in the case, at an adequate amount, covering the service rendered under the circumstances; and I fix the salvage award in this case at the sum of $1,300. The mate and seamen have intervened, and their proctor claims that the award should be divided by giving two-thirds to the crew and one-third to the ship, citing The Henry Ewbank, 1 Sumn. 400, Fed. Cas. No. 6,376; 21 Am. & Eng. Enc. Law (1st Ed.) 699–700. But on this branch of the case, as on the other, it seems to me that no hard and fast rule of proportion ought to prevail. It must occur to the least thoughtful mind that there are cases where the danger and work of the seamen might be trivial, and the expense to a great ocean liner in deviating from her course, delaying her voyage many days at enormous expense, would make the rule contended for by the interveners unfair. This award should be paid into the registry of the court, and

distributed as follows: $500 to the owners of the Mueller; $100 to the captain; $100 to Larson, the mate; $100 each to Seamen Higgie and Bonner; and the balance to the captain, mate, and each member of the crew in proportion to the wages respectively paid to them. Let a decree be entered accordingly.

C. E. Kremer, for appellant.

Frank S. Masten (Harvey D. Goulder and S. H. Holding, of counsel), for claimant.

R. G. MacDonald, for certain appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

PER CURIAM. This is an appeal from a decree allowing $1,300 salvage to the owner and crew of the steamer Mueller for services in saving the steamer Eliza Strong and cargo. The appellants are the owners of the Mueller, who complain at the amount of the gross salvage allowance, and at the manner of distributing same between the owner and the officers and the crew of the Mueller.

If the matter of the amount of a salvage award, and its distribution between owner and crew, were not one so largely dependent upon the exercise of a sound judicial discretion, we might be disposed to regard the reward as somewhat meager. But neither the amount of the award, nor the method of distribution, is so unsatisfactory as to justify a disturbance of the decree, under the well-settled rule of this court not to set aside a salvage award on account of its amount unless we are plainly convinced that the discretion of the trial judge has been manifestly abused. The R. R. Rhodes, 82 Fed. 751, 27 C. C. A. 258; The H. E. Runnels, 82 Fed. 755, 27 C. C. A. 183.

Decree affirmed.